UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSE VARGAS,<br><br>                    Plaintiff,<br><br>     v.<br><br>CHELAN COUNTY REGIONAL JUSTICE CENTER, a division of Chelan County, and GRANT COUNTY DISTRICT COURT, a division of Grant County,<br><br>                    Defendants. | NO. CV-09-39-EFS<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |

Before the Court, without oral argument, are Defendants Chelan County Regional Justice Center's ("CCRJC") and Grant County District Court's ("GCDC") Motions for Summary Judgment (Ct. Recs. 17 & 22), and CCRJC's Motion to Exclude Expert Testimony (Ct. Rec. 47). For the reasons stated below, the Court grants these motions.

## I. Background

In February 2005, Mr. Vargas was convicted of a traffic offense in Douglas County District Court. In November of that year, GCDC sentenced Mr. Vargas to thirty days imprisonment for violating probation imposed for that offense, concurrent to a separate ten-day sentence from Douglas

ORDER ∗ 1

County. Because Mr. Vargas had recently moved to Wenatchee, he requested permission to serve his sentence at CCRJC. GCDC granted permission to do so to accommodate Mr. Vargas. Whenever inmates serve their sentence outside the county, GCDC sends a letter saying that the inmate must give GCDC a commitment signed off by the jail as proof of confinement. (Ct. Rec. 19 Ex. 2.) Although GCDC Clerk Jessica Hinen apparently sent Mr. Vargas this letter, *id.*, he denies that he received it. *Id.* at 20. CCRJC ordinarily notifies the courts in Chelan and Douglas Counties, which are in its service area, when individuals from those counties serve their sentence at CCRJC. (Ct. Rec. 41 Ex. E at 10.) It does not notify courts in other counties. *Id.* After Mr. Vargas was released in January 2006, neither he nor CCRJC notified GCDC that he completed his sentence. *Id.* at 13; *id.* Ex. C at 28.

Two years passed without word from GCDC. One day, Ms. Hinen scanned Mr. Vargas's file and noticed that GCDC had no proof that he had served his sentence. Instead of asking CCRJC or Mr. Vargas to explain, Ms. Hinen obtained an arrest warrant. She said later that she is not required to obtain proof and that she does not "babysit." *Id.* Ex. B at 14. Over Mr. Vargas's protests, Grant County Sheriff deputies arrested him at work at around 3:00 p.m. on February 14, 2008, for failure to serve his sentence. *Id.* Ex. C at 9-11. A baffled Mr. Vargas was booked at the Grant County Jail, where he called his lawyer to straighten out the confusion. *Id.* at 11. Fortunately for Mr. Vargas, his kafkaesque[1]

---

[1] Czech novelist Franz Kafka is widely recognized as a master of the absurd. In his famous novel *The Trial*, the protagonist is arrested and tried by an unnamed authority without ever knowing the offense with which

ORDER * 2

confinement soon ended. Eventually, jail authorities called CCRJC and confirmed that Mr. Vargas had served his sentence, and released him at 7:00 p.m. *Id.* at 12; (Ct. Rec. 1 at 3.) Although Mr. Vargas was no longer incarcerated, four days later, GCDC sent Mr. Vargas a letter ordering him to pay a $168.00 fee for issuing the arrest warrant.

Mr. Vargas sued Defendants on February 11, 2009, alleging Defendants violated his constitutional rights and committed several state law torts.

## II. Discussion

### A. Standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*

---

he is charged.
ORDER ~ 3

475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**B.   Motion to Exclude**

Both Defendants move to exclude as untimely the testimony of Warren F. Cook, Mr. Vargas's expert witness, who plans to testify about law enforcement policies. The Court's May 14, 2009 scheduling order required Mr. Vargas to disclose experts by August 11, 2009. (Ct. Rec. 15 at 2.) Additionally, it warned the parties that "failure to timely identify experts and provide reports in accordance with Rule 26 and this scheduling order may result in exclusion of such testimony absent good reason." *Id.* Mr. Vargas first mentioned Mr. Cook in his September 11, 2009 witness list. (Ct. Rec. 16.) He first submitted a summary of Mr. Cook's testimony on January 11, 2010, in the declaration in opposition to the motions under consideration. (Ct. Rec. 40.)

A district court may modify its scheduling order "for good cause." Fed. R. Civ. P. 16(b)(4). The good cause inquiry focuses on the

ORDER ~ 4

diligence of the party seeking amendment of the order. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). If that party was not diligent, the inquiry ends; the existence or degree of prejudice to the other party is irrelevant. *Id.*; *see also Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005) (upholding exclusion of late-identified experts when no good cause was shown).

Mr. Vargas did not show that he was diligent in retaining and identifying Mr. Cook before the Court's deadline. He stresses that Defendants suffered no prejudice from the late filing, but that is no excuse. His only explanation for his lateness is that the expert disclosure deadline was unreasonable and that depositions revealed new facts that changed his expert needs. He does not demonstrate that he diligently sought to comply with the Court's order. Accordingly, Mr. Cook's testimony is excluded and his declaration is stricken.

**C.   Section 1983**

Mr. Vargas's Complaint alleges that Defendants violated his due process rights by arresting him without probable cause and GCDC infringed his liberty interest by issuing an arrest warrant without first checking with CCRJC. Additionally, Mr. Vargas raised an equal protection claim against CCRJC for the first time in his opposition brief. The Court finds that Defendants are entitled to summary judgment on these claims.

**1.   Due Process**

Defendants are entitled to summary judgment on the due process claim based on Mr. Vargas's arrest because Mr. Vargas does not allege that Defendants arrested him: the Complaint itself says that Grant County Sheriff deputies did. (Ct. Rec. 1 at 2-3.) Furthermore, "[a]n incorrect arrest does not provides grounds for a claim of deprivation of

ORDER ~ 5

liberty without due process if the arrest was made pursuant to a valid warrant based upon probable cause." *Bretz v. Kelman*, 773 F.2d 1026, 1030-31 (9th Cir. 1985) (citing *Baker v. McCollan*, 443 U.S. 137, 143-45 (1979)). It is undisputed that GCDC's records showed he had not completed his sentence. (Ct. Rec. 20 at 3; Ct. Rec. 24 at 2; Ct. Rec. 41 Ex. 3 at 13-14; Ct. Rec. 42 at 4.) Therefore, the issuing judge had reason to believe that Mr. Vargas should be arrested to begin serving his sentence. Although Defendants later discovered that Mr. Vargas was arrested for no good reason, the arrest was based on a valid warrant supported by probable cause.

Mr. Vargas's Complaint also says that GCDC has an "improper custom or policy in making arrests and obtaining arrest warrants." (Ct. Rec. 1 at 5.) The Court sympathizes with Mr. Vargas. At two crucial junctures, Defendants failed to take simple actions that would have prevented Mr. Vargas from suffering serious embarrassment and inconvenience. When Ms. Hinen discovered GCDC had no proof of Mr. Vargas's confinement, instead of obtaining a warrant, she could have picked up the telephone and called CCRJC. And when the deputies arrived to arrest Mr. Vargas, they could have allowed him to call his lawyer to explain rather than cart him off to jail and hold him for four hours. If either Ms. Hinen or the deputies had remembered to be the good people they think they are and may well be, the entire mishap, together with this lawsuit, would likely never have happened.

Nevertheless, the Court cannot conclude that Defendants violated Mr. Vargas's due process rights. The Supreme Court repeatedly held that deprivations of liberty caused by a government official's negligent actions do not implicate the due process clause. *County of Sacramento*

ORDER ~ 6

*v. Lewis*, 523 U.S. 833, 849 (1998); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986); *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Defendants' conduct, although not ideal, amounted to negligence at most. Mr. Vargas does not allege that either Defendant intentionally harmed him by failing to coordinate with the other before he was arrested, and offers no support to show that they purposefully deprived him of his rights. Accordingly, the Court concludes that Defendants' actions did not violate Mr. Vargas's substantive or procedural due process rights.

### 2. Equal Protection

Mr. Vargas argues that CCRJC policy discriminates among similarly-situated groups because CCRJC provides proof that a sentence was completed to courts in counties within its service area but not to other courts. (Ct. Rec. 39 at 10-13.) Mr. Vargas did not raise this claim in any way before his opposition brief, which he filed more than two months after the discovery cutoff and only three months before trial. (Ct. Rec. 15.) It would unfairly prejudice CCRJC to entertain this claim because Mr. Vargas did not raise it until after the discovery cutoff.

Furthermore, Mr. Vargas's equal protection claim lacks legal support. In order to show an equal protection violation, a plaintiff must demonstrate that the defendant treated similarly-situated groups differently. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). If the distinction is based on membership in an unprotected class, the government must show only that the classification is rationally related to a legitimate interest. *Cleburne*, 473 U.S. at 440 (citations omitted). Mr. Vargas claims that CCRJC discriminates against inmates from outside its service area because it does not notify the courts that sentenced

ORDER * 7

them after they complete their confinement.  Because geographic location is not a protected category, geographic discrimination does not violate equal protection unless there is no rational basis for the distinction. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 54 n.110 (1973); *McGowan v. Maryland*, 366 U.S. 420, 427 (1961) (holding that the Equal Protection Clause requires "equality between persons as such, rather than between areas and that territorial uniformity is not a constitutional prerequisite"); *United States v. Yazzie*, 693 F.2d 102, 103 (9th Cir. 1982).  CCRJC showed a rational basis for its policy.  Ordinarily, CCRJC accepts inmates only from the counties within its service area.  Inmates from outside the service area, such as Mr. Vargas, must receive special permission to serve their sentence at CCRJC.  Because so few inmates from outside the service area spend time at CCRJC, it is rational for CCRJC officials to require such inmates to contact their sentencing courts themselves after completing their sentence.

Finally, although Mr. Vargas argues that his equal protection claim implicates a fundamental right and CCRJC's policies should be subject to strict scrutiny, this confuses equal protection with due process. *See*, *e.g.*, *Reno v. Flores*, 507 U.S. 292, 301-02 (1993); *Halverson v. Skagit County*, 42 F.3d 1257, 1261 (9th Cir. 1994) (noting that protection from government action provided by substantive due process is reserved for vindication of fundamental rights).  For the reasons stated above, Mr. Vargas's due process claim must be dismissed.

Mr. Vargas's § 1983 claim is his only claim arising under federal law, and the Court dismisses that claim.  The Court declines to exercise pendent jurisdiction over the state law claims because there is no federal claim. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715,

ORDER * 8

725 (1966). Moreover, the dispute in this case is between a citizen and municipalities of Washington, so there is no diversity of citizenship. *See Cook v. City of Pomona*, 884 F. Supp. 1457, 1463 (C.D. Cal. 1995). Because the Court concludes that both Defendants are entitled to summary judgment on the only federal claim, it must dismiss Mr. Vargas's suit in its entirety because it lacks subject matter jurisdiction to hear the remaining claims. *See* 28 U.S.C. §§ 1331, 1332.

### III. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1) Defendants' Motions for Summary Judgment **(Ct. Recs. 17 & 22)** are **GRANTED**.

2) CCRJC's Motion to Exclude **(Ct. Rec. 47)** is **GRANTED**, and GCDC's Objection to Plaintiff's Expert Warren Cook's Declaration **(Ct. Rec. 52)** is **SUSTAINED**. The Declaration of Warren F. Cook **(Ct. Rec. 40)** is **STRICKEN**.

3) The Clerk of the court is directed to **ENTER** Judgment in Defendants' favor on the § 1983 claims.

4) This case is **CLOSED.**

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and distribute copies to counsel.

**DATED** this _____22nd_____ day of February 2010.

S/ Edward F. Shea<br>EDWARD F. SHEA<br>United States District Judge

Q:\Civil\2009\39.MSJ.wpd

ORDER * 9